UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TONYA S. FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-592-PPS-SJF |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Tonya Flores has appealed from an administrative law judge's denial of her

application for Supplemental Security Income benefits.  She claims the ALJ committed a

single error involving how the ALJ analyzed her subjective symptoms.  Because I find

the ALJ properly considered and analyzed Flores' subjective symptoms, the ALJ's

decision will be affirmed.

## Background

Tonya Flores applied for supplemental security income benefits on July 18, 2022,

claiming that she was disabled as of May 2, 2022, due to Graves Disease, ortho arthritis,

carpal tunnel, diabetes, spinal stenosis, degenerative disc disease, high blood pressure,

high cholesterol, thyroid removed, venous reflex, PTSD, and cataracts. [A.R.[1] 101.]  Her

claims were denied initially and again upon reconsideration.  After a subsequent

hearing, an ALJ denied the claim. [A.R. 1.]  Flores now seeks review of that decision.

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry No. 6.  Citations
are to the page number in the lower right-hand corner of the A.R.

In the written decision, the ALJ determined that Flores has the severe impairments of asthma, carpal tunnel syndrome, headache, depression, anxiety, diabetes mellitus, posttraumatic stress disorder (PTSD), obesity, status post lumbar fusion, post laminectomy syndrome, lumbar spondylosis, status post COVID-19 infections, and inflammatory arthritis. [A.R. 12.] The ALJ then determined that Flores did not meet any of the applicable social security listings for disability. [A.R. 13-14.]

When considering Flores' residual functional capacity (RFC), the ALJ determined that she is capable of performing work at the light level as defined in 20 CFR § 416.967(b) with the following additional lengthy and specific limitations: she can never climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs, balance, stop, kneel, crouch, and crawl.  She can have no more than frequent exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, and poor ventilation and must avoid dangerous moving machinery and unprotected heights.  She can frequently handle and finger with the upper extremities bilaterally, can occasionally reach overhead with the bilateral upper extremities, she must avoid very loud noises. She can understand, remember, and carry out detailed but not complex tasks.  She cannot perform work requiring a specific production rate, such as assembly-line work but she can meet production requirements that allow a flexible and goal-oriented pace. She can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods.  She can deal with occasional changes in a

-2-

routine work setting and tolerate occasional and superficial interactions with supervisors, coworkers, and the general public with superficial basis meaning is unable to mediate, negotiate, arbitrate, confront, direct, or supervise others. [A.R. 15.]

At the administrative hearing, the ALJ presented the RFC to a vocational expert (VE) and then asked the VE some hypothetical questions. In summary, the VE opined that a hypothetical person with Flores' RFC could likely find gainful employment. [A.R. 50-53.] The ALJ later determined that Flores is capable of doing occupations such as light cleaner housekeeping, unskilled light mail clerk, and unskilled light merchandise marker. [A.R. 19.] As a result, the ALJ found that Flores was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. § 405(g).

The term "substantial evidence" sounds like a high bar. It is not. Indeed, it is even less than a preponderance of the evidence standard. So held the Supreme Court more than fifty years ago. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But

-3-

"substantial evidence" means more than a "scintilla" of evidence. *Id.* Put another way, "[e]vidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

My review of the ALJ's decision is guided by the following principle articulated by the Seventh Circuit: "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

With those standards in mind, let's turn to the single issue raised in this case: whether the ALJ failed to properly analyze Flores' subjective symptoms? When evaluating a claimant's subjective symptoms, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 C.F.R § 404.1529(c)(3). According to the regulations, "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and

other evidence, will be taken into account . . . ." 20 C.F.R. § 404.1529(c)(3).  Additionally,

"[y]our symptoms, including pain, will be determined to diminish your capacity for

basic work activities to the extent [they] can reasonably be accepted as consistent with

the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).  This is

important to note "[b]ecause symptoms, such as pain, are subjective and difficult to

quantify . . . ." 20 C.F.R. § 404.1529(c)(3).

When an ALJ dismisses a claimant's subjective symptoms, she must follow up

with an explanation for the rejection. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013);

*Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Fanta v. Saul*, 848 F. App'x 655, 659

(7th Cir. 2021) (unpublished) (finding it sufficient that the ALJ dismissed the claimant's

subjective symptoms because the ALJ explained they were contrary to statements made

to the claimant's doctors).  This means an ALJ must explain her evaluation of subjective

symptoms in such a way so as to allow the Court to meaningfully determine whether

the conclusion is logically and rationally based on evidence in the record. *Villano v.*

*Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir.

2005).  But an "ALJ may not discredit a claimant's testimony about her pain and

limitations solely because there is no objective medical evidence supporting it." *Villano*,

556 F.3d at 562; 20 C.F.R. § 404.1529(c)(2).

Of course, "[a]n ALJ need not discuss every detail in the record as it relates to

every factor," but "an ALJ may not ignore an entire line of evidence contrary to [their]

ruling." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).  "As long as an ALJ gives

specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279; *see also Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (a subjective symptom evaluation is "patently wrong" only if it "lacks any explanation or support."); *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (if substantial evidence supports the ALJ's decision, it must be affirmed "even where reasonable minds might disagree about the outcome.").

Let's first consider Flores' testimony during the hearing. Flores testified she had difficulty driving and struggled with depth perception and would sometimes forget where she was going. [A.R. 33.] She claims she can't sit in the car too long because her back would start hurting and the carpal tunnel in her hands would hurt. [*Id.* 34.] Flores had surgery on her left hand for a carpal tunnel release, which has loosened up her left hand, and she was waiting for the next summer for the surgery on her right hand. *Id.* She claims the surgery improved her hand "very little." [*Id.* 43.] Flores testified she thought she was unable to work because "every time [she tries] to do anything [she] get[s] in too much pain, from [her] lower back especially. [She has] spinal stenosis, and degenerative disc disease, and arterial arthritis. Especially in [her] lower back, all [her] joints have the arthritis in it. The neuropathy bothers [her] legs and [her] feet with pain, numbness, tingling. [She] also [has] plantar fasciatus, which is bothering [her] heels." [*Id.* 35.] Flores claims her back pain was getting worse despite taking injections and having physical therapy. [*Id.* 36.]

When describing her typical day, Flores claims she has a lot of pain in the

morning and it takes her a while to get up. [*Id.* 37.] The pain decreases a little when she starts moving, but then she feels achy. *Id.* She drives her daughter to school, which is only three minutes away. *Id.* Then she lays back down and waits for around 8:00 when her son gets up. *Id.* She helps him a little and then drives him to school, about 8 minutes away. *Id.* When she is back home, she takes her medication, microwaves breakfast, and then goes to the recliner to lay down and relax until her kids get out of school. [*Id.* 38.] Flores claims she can do the laundry if someone can carry it up the stairs and put it away. *Id.* She goes a few days between showering because the hot water bothers her bones. [*Id.* 39.] She has difficulty buttoning and using zippers, as well as bending when putting on socks. *Id.* She claims she doesn't like watching TV because she has cataracts and migraines. [*Id.* 39-40.] She takes Percocet for pain and claims sometimes she will be at a pain level of 5/10, and other days 8/10. [*Id.* at 40.] Flores goes to the grocery store, but rides in a scooter. [*Id.* 41.] Flores claims her mental health issues affect her ability to do things - it prevents her from going outside and seeing her friends. *Id.* She does take anxiety medication, and she feels like she is better. [*Id.* 42.] Flores sees a therapist. *Id.*

Additionally, Flores claims she walks with a limp. [*Id.* 43.] She can stand about 20 minutes. [*Id.* 44.] She can't walk without any amount of pain. *Id.* When it comes to sitting, she also gets uncomfortable and has to move. *Id.* She can lift a gallon of milk. *Id.* She gets migraines about three times a week. [*Id.* 45.] She has asthma and gets short of breath with any activity. [*Id.* 46.] Her anxiety is triggered by crowds of people. *Id.*

She has a difficult time paying attention and focusing. [*Id.* 46-47.] Flores contends her

medication makes her a little drowsy. [*Id.* 47.]

In evaluating Flores' subjective symptoms, the ALJ summarized her testimony as

follows:

> At the hearing, the claimant alleged that she is limited due to
> depth perception issues. She also alleges back, bilateral
> hands, and arm pain. The claimant testified that she
> experiences neuropathy in her feet and heel pain. The
> claimant alleges that she can stand 20 minutes, lift a gallon of
> milk, and has difficulty climbing stairs. She also indicated
> that she has to change positions often when sitting. She
> alleges shortness of breath with any amount of activity and
> difficulty handling small objects. She also experiences
> symptoms of disassociation and forgets where she is at
> times. She has trouble with crowds and experiences anxiety.
> The claimant also indicated that she gets irritated and
> agitated at times and has trouble with attention.

[A.R. 15-16.]

It seems to me that this is a pretty fair summary by the ALJ of Flores' testimony

during the hearing. The ALJ went on to make these specific conclusions about Flores'

subjective symptoms:

> After careful consideration of the evidence, the undersigned
> finds that the claimant's medically determinable
> impairments could reasonably be expected to cause the
> alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence, and limiting effects of
> these symptoms are not entirely consistent with the objective
> evidence of record and other evidence, as defined in 20 CFR
> 416.929(c)(4). For example, in January 2023, the claimant
> presented to the emergency department with respiratory
> symptoms (Exhibit C10F at 38). On examination, pulmonary
> effort was normal; however, there were some harsh
> intermittent crackles in the left lower lung field. The

-8-

claimant was diagnosed with acute bronchitis. She again sought treatment for an asthma exacerbation in the emergency department in December 2023 (Exhibit C15F at 17). On examination, there was some intermittent wheezing bilaterally; however, pulmonary effort was otherwise normal. [A.R. 16.]

Looking only at this paragraph in the ALJ's opinion one might reasonably conclude that it is too terse for meaningful review. But that would be completely unfair to the lengthy analysis the ALJ actually engaged in. For example, in the very next paragraph, the ALJ observes treatment records documenting carpal tunnel syndrome, and "[t]he claimant experiences decreased sensation," but also notes Flores has intact strength and normal coordination and balance. *Id.* Continuing, the ALJ noted Flores' chronic headaches and an MRI of the head in August 2023 which demonstrated moderately advanced white matter disease likely representing demyelinating disease (Ex. C11F at 5), but recognized "[t]here was no evidence for actively enhancing lesions" and lumbar puncture was recommended for her headaches. [A.R. 16.]

The ALJ then went on to discuss Flores' documented history of low back pain along with an MRI of the lumbar spine demonstrating bulging discs and stenosis (Ex. C18F at 5), and a history of lumbar laminectomy and lumbar functions (Ex. C18F at 2). [A.R. 16.] However, the ALJ also recognized that recent treatment records documented negative straight leg raise testing with normal ambulation, and examination of the thoracic and lumbar spine was also normal. *Id.* The ALJ also considered the impact of obesity on Flores' limitation of function. *Id.* Finally, the ALJ considered Flores' mental limitations, noting she had reported improvement in her depression and anxiety with

treatment (Ex. C13F at 2). [*Id.* at 17.]

Flores argues that, although the ALJ references Flores' objective evidence throughout the decision, she "fails to explain how or what part of Plaintiff's subjective testimony is not supported by the objective evidence." [DE 11 at 8.] Let's examine that. During the hearing, Flores testified that she could not work because of severe back pain and lower extremity neuropathy that made it hard to walk, stand in place, or remain seated in any one position. [A.R. 35, 40, 41, 43.] The ALJ absolutely acknowledged a "history of low back pain, and an MRI of the lumbar spine demonstrated bulging discs and stenosis. (See Exhibit C18F at 5.)" [A.R. 16.] The exhibit the ALJ refers to (C18F) consists of progress notes from September 26, 2023, through March 29, 2024, from Dr. Syed Quadri who is part of the Vanguard Medical Group. The notes summarize the treatment Flores received for back pain going back to early 2022, and refer back to a 2021 lumbar MRI which indicated Flores had bulging discs and stenosis (which is consistent with what the ALJ recited in her opinion). [A.R. 801-08.] The ALJ does provide reasons for finding Flores' allegations of disabling back pain unsupported, and cites to more recent treatment records from October 2, 2023, noting that the straight-leg raising test of both the right and left leg was not limited by stiffness, and ambulation was not limited. [A.R. 16, 672.] In addition, the ALJ cites to Exhibit C18F at 5, recognizing that upon examination on September 26, 2023, the thoracic and lumbar spine were normal, but there was pain with palpation [A.R. at 16, 805], and that these findings were essentially unchanged on a follow-up on January 3, 2024. [A.R. at 16, 811.]

The ALJ explained her rationale regarding her conclusion that Flores' statements about the intensity and limiting effects of her back pain were not entirely consistent with the objective evidence in the medical record. There is no patent mistake in these explanations and citations to the record.

The same can be said about the ALJ's evaluation of Flores' difficulty with her hands and fine motor skills.  The ALJ absolutely recognized that Flores' carpal tunnel syndrome "with positive Tinel's and Phalen's signs of the bilateral wrists" was documented in the medical record, and cites to the exhibit, and notes that during the consultative exam with Dr. Raghavendra Rao, Flores had decreased sensation and grip strength. [A.R. 16.]  But the ALJ then concludes that "[t]he claimant experiences decreased sensation, but intact strength, and normal coordination and balance." [A.R. 16.]  This conclusion is supported by the ALJ's analysis of the consultative examiner and Flores' treating physician.  For example, the ALJ found the opinion of Dr. Rao (the consultative examiner) "partially persuasive," finding her conclusion that Flores would have "moderate limitations" in lifting, handling, carrying, feeling, and grasping, "somewhat vague and not vocationally relevant." [A.R. 17.]  The ALJ found that Mr. James Vandermark's opinion (Flores' treating source) was "more consistent with the weight of the objective evidence of record" and his opinions were "generally persuasive." *Id*.  Mr. Vandermark, FNP-C (Family Nurse Practitioner-Certified), completed a physical assessment-questionnaire form on February 23, 2024, and concluded Flores could frequently reach, and constantly handle, her impairments did

-11-

not prevent her from performing certain motions such as lifting, pulling, and holding objects, and she had no difficulty with ambulation. [A.R. 17, 799-800.]  The ALJ went so far as to note that Nurse Practitioner Vandermark's opinion was somewhat inconsistent with regard to lifting and/or carrying, but that his other findings were consistent with the record.  *Id.*  So, once again, the ALJ has taken into account Flores' testimony about her symptoms, but then justified her ultimate findings by evaluating and citing her conclusions about the opinions of the consultative examiner and Flores' treating provider.

Flores also argues that the ALJ did not consider the "impacts of [her] neuropathy." [DE 11 at 10.]  But again, the ALJ justified her findings on this topic.  The ALJ acknowledged that Flores testified "she experiences neuropathy in her feet and heel pain" and that the treatment records showed "decreased sensation" in her wrist. [A.R. 16.]  But the ALJ also specifically referred to the findings of normal coordination, balance, and gait. [A.R. 16, 18, 572, 672.]  Flores' treating provider, NP Vandermark, opined that she had no difficulty with standing for six to eight hours, no difficulty with ambulation, and no weight-bearing restrictions. [Tr. 17, 799.]  Thus, the ALJ explained her reasoning behind finding Flores' neuropathy was not disabling.

In sum, the ALJ's evaluation of Flores' symptoms was adequately supported with evidence and explanation.  In arguing that the ALJ's analysis of her subjective symptoms requires a remand, Plaintiff's argument amounts to nothing more than a request to have the ALJ weigh the factors differently.  *See, e.g., Jones v. Astrue*, 623 F.3d

1155, 1162 (7th Cir. 2010) ("Jones must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong."). But that is not the purpose of such an appeal. The ALJ was entitled to weigh the medical evidence in the record and the opinions of the consultative examiner and treating provider in determining whether Flores' subjective complaints were supported by the medical evidence, and if not, discount the degree and severity of the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(4). As outlined above, the ALJ adequately evaluated Flores' assertions by assessing and weighing other evidence in the record (and by specifically referring to that other evidence in the record in her written opinion). She provided adequate support and reasoning behind the conclusions she reached, and while reasonable minds could differ as to the ultimate outcome, I certainly cannot say that the ALJ's credibility determination was "patently wrong." *Grotts,* 27 F.4th at 1279.

## Conclusion

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Tonya Flores' application for supplemental security income benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

ENTERED: April 22, 2026.

/s/  Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

-13-